IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS L. HOPPER,<br><br>            Plaintiff,<br><br>       v.<br><br>GAVIN NEWSOM, et al.,<br><br>            Defendants. | No.  2:20-CV-01802-KJM-DMC-P<br><br><br>ORDER |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the Court is Plaintiff's original complaint.  See ECF No. 1.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  See 28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915A(b)(1), (2).  Moreover, the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  This means that claims must be stated simply, concisely, and directly.  See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)).  These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it

1

rests.  See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996).  Because Plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard.  Additionally, it is impossible for the Court to conduct the screening required by law when the allegations are vague and conclusory.

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff brings First, Eighth, and Fourteenth Amendment claims in response to the ongoing COVID-19 crisis and allegedly inadequate medical care.  See id. at 4, 5, 20.  Plaintiff names as defendants: (1) Gavin Newsom, as Governor of California; (2) Clark Kelso, a federal receiver for California Correctional Health Care; (3) Ralph Diaz, Secretary of California Corrections and Rehabilitation ("CDCR"); (4) James Pickett, acting warden of High Desert State Prison ("HDSP"); (5) M. Knedler, a correctional officer at HDSP; (6) D. Espinoza, an appeals supervisor at HDSP; (7) K. Thorton, an associate warden at HDSP; and (8) Tamera Taber, a doctor and ADA Coordinator at HDSP.  Id. at 2–3, 17.

Plaintiff is a 61-year-old inmate at HDSP.  Id. at 8.  He alleges that he is a high-risk medical inmate with numerous medical conditions, including arthritis, asthma, and psoriasis.  Id.  He further asserts mobility, visual, and hearing impairments.  Id.

Plaintiff first claim alleges Defendants' response to the COVID-19 crisis violates the First and Eighth Amendments.  See id. at 4, 8.  At base, Plaintiff claims arise from what he views as flaws in Defendants' handling of COVID-19 in prisons, such as shortages of protective equipment and the housing of infected inmates.  Id. at 8–19.  He contends that CDCR failed to provide him a face mask until June 2020 and that CDCR "fraudulently" provided hand sanitizer without alcohol capable of killing the COVID-19 virus.  Id. at 8–10.  He alleges that he was also denied weekly supplies such as soap, floor cleaner, body wash, razors, and dental floss.  Id. at 10.  Plaintiff claims that he requested, but was consistently denied, cleaning and protective supplies because none were available due to shortages.  Id.

///

2

Defendants, including Defendant Secretary Diaz, allegedly took several steps in response to the spread of COVID-19. See id. at 11. Plaintiff claims that medically high-risk prisoners (such as himself) were not released from prison, but that CDCR instead recklessly overcrowded infected prisoners into HDSP, creating a high-risk environment that caused additional infections. Id. at 12–14. Defendants Pickett and Knedler allegedly refused to ensure proper safety measures were taken after prisoners were transferred, including by failing to repair empty cells in which prisoners could have been segregated. Id. at 14.

In March 2020, Defendant Diaz ordered significant restrictions be put in place at all CDCR facilities. Id. at 15. Inmate visits were suspended, outdoor yard time reduced to three days a week, dayroom activities were reduced from two and a half hours to one hour, and phone calls limited to provide time for cleaning the phones. Id. Plaintiff takes particular issue, however, with restrictions affecting HDSP's law library. Id. at 16. He alleges that physical access to the law library was restricted, limiting Plaintiff's ability to access information because Plaintiff requires physical access to ADA devices in the library, including visual aid devices. Id. Plaintiff allegedly made several ADA requests to access the visual aid device, but Defendant Thorton purportedly denied Plaintiff access to the aid. Id. at 16–17. Plaintiff's request to store the device in his cell was also allegedly denied. Id. at 17. Plaintiff claims that, as a result, he was unable to meaningfully access the court system and Plaintiffs' cases pending before other courts were dismissed. Id.

Defendant correctional staff, including Defendant Knedler, have also failed to enforce safety measures such as proper social distancing among HDSP inmates. See Id. at 17–18. Plaintiff contends that Defendants (Plaintiff only specifies Knedler) failed to enforce state-mandated six-foot social distancing while inmates were outdoors in the yard. Id. Both staff and inmates allegedly interacted with less than one foot of space between them and while improperly wearing face coverings around their necks or chins. Id. When yard activity ended, roughly thirty inmates who were still improperly wearing masks reentered the prison through a small hallway with less than one foot of space between them. Id. at 18.

///

1          Plaintiff contends that he has repeatedly attempted to rectify the flaws in HDSP's
2   handling of the COVID-19 virus through the prison's administrative grievance process.  Id.
3   Defendant Espinoza, however, allegedly denied each of Plaintiff's grievances as well as each of
4   Plaintiff's appeals of the rejected grievances.  Id. at 18–19.  Espinoza allegedly failed to attach a
5   "screen-out" form to Plaintiff's rejected grievances, which would have identified any deficiencies
6   in Plaintiff's grievances and instructed him on how to correct them.  Id.  Plaintiff contends that
7   another administrative appeals officer accepted Plaintiff's appeal when Espinoza was not there,
8   and that his appeal reached the first level of review.  Id. at 19.  When Espinoza returned, however,
9   she denied Plaintiff's appeal on false grounds in order to thwart his attempts to rectify HDSP's
10  failures to adequately address COVID-19.  Id.  Plaintiff contends that the administrative appeals
11  process was thus effectively unavailable to him.  Id. at 18–19.
12         Plaintiff's second claim alleges further First and Eighth Amendment violations in
13  addition to Fourteenth Amendment violations.  Id. at 5.  Plaintiff's claims largely extend from
14  HDSP's failure to provide adequate medical care to Plaintiff.  Id. at 20–28.  He first claims that,
15  in May 2020, he submitted a medical request to have a broken tooth repaired.  Id. at 20.  The
16  claim went unanswered, as did three similar requests throughout June 2020, leaving Plaintiff in
17  pain and his tooth broken.  Id.  Plaintiff's medical requests for his routine prescriptions also went
18  unfulfilled for over a month.  Id.  Plaintiff contends that in June 2020 he requested refills for his
19  asthma inhaler, psoriasis shampoo, eye drops to slow macular degeneration, and replacement
20  batteries for his hearing aids. Id. His prescriptions were not filled until late July.  Id.  He does not
21  specify a responsible defendant.  Id.
22         In both June and July, Plaintiff also allegedly did not receive his prescribed
23  monthly injection of Humira to treat his psoriasis.  Id. at 21.  Plaintiff's joints, neck, and lower
24  back became inflamed and painful, reducing his mobility and ability to sleep.  Id.  He contends
25  that the failure to provide his medication, in combination with failure to provide him with
26  required dental treatment, constituted cruel and unusual punishment.  Id.
27  ///
28  ///

4

1            Plaintiff further states that, on June 29, 2020, correctional officers prepared him
2    for transport to an outside medical facility to have skin cancer removed from his left shoulder
3    blade. Id.  The officers are identified only as "unknown does" and not named as defendants in
4    Plaintiff's complaint.  See id. at 1–2, 22.  The officers allegedly shackled Plaintiff in waist and
5    ankle chains secured by a "black box" covering the keyhole.  Id. at 22.  The chains with the black
6    box allegedly restricted Plaintiff's hand movements and caused pain.  Id.  When Plaintiff
7    complained of significant pain, the officers allegedly told Plaintiff to "deal with it."  Id.  The
8    officers placed Plaintiff into a van and locked him in a steel cage with room only to sit.  Id. The
9    officers refused to secure Plaintiff's seatbelt, telling Plaintiff to do it himself even though the
10   chains prevented Plaintiff from using his hands.  Id.

11           During the subsequent 3.5-hour trip, although the officers stopped for breaks and
12   refueling, the officers did not permit Plaintiff to use the restroom.  Id. at 22–23. Plaintiff contends
13   that he suffers from a dysfunctional prostrate and must frequently urinate.  Id. at 23.  The officers
14   allegedly told Plaintiff to use a bottle, but because of the chains restricting Plaintiff's hands, he
15   could not hold the bottle steady requiring him to painfully "hold it."  Id.  The correctional officers
16   transporting Plaintiff caused him further pain on arrival at the medical facility by refusing to
17   allow him to take an elevator.  Id.  Plaintiff states that he uses a cane and that using the stairs
18   caused additional suffering and pain to his hips, legs, and back due to sciatic nerve damage.  Id.

19           Plaintiff, per standard procedure, was quarantined for fourteen days upon return to
20   HDSP, but was allegedly again placed at risk for COVID-19 because inmates were permitted to
21   interact with him prior to quarantine.  Id. at 24.  On the second day of his quarantine, Plaintiff's
22   bandage covering the surgical wound from his skin cancer removal, bled through, soaking his bed
23   and clothing with blood.  Id.  He was denied a fresh bandage for four days because no order had
24   been placed for a bandage change.  Id.  When a nurse finally did change his bandage, the wound
25   burned and emitted a foul odor.  Id. at 25.  The nurse told Plaintiff that the wound had become
26   infected and that staff must have neglected to place an order for is bandages.  Id.  Three more
27   days passed before Plaintiff received an additional bandage change.  Id.  Plaintiff did not receive
28   any pain medication to relieve the pain from his surgical wound, and his dental conditional

remained unresolved causing ongoing discomfort. Id. at 26.

Furthermore, throughout quarantine, Plaintiff contends that temperature checks (screening for COVID-19) were conducted with an electronic thermometer passed from inmate to inmate without being disinfected. Id. Plaintiff alleges that the uncleaned thermometer placed him at further risk of COVID-19. Id. He also claims that, he was illegally held in quarantine for twenty-three days without access to outdoor exercise or correspondence with family and friends (due to denial of the visual aid devise). Id. Plaintiff alleges that the quarantine area to which he was confined has its own yard and phones that Plaintiff could have been given access to while maintaining proper COVID-19 precautions. Id. at 27.

When Plaintiff was released from quarantine, his cell block was itself placed on quarantine due to an inmate's drug overdose and high temperature. Id. Plaintiff was allowed only 1.5 hours of outdoor time over a nineteen-day period. Id. He was again denied access to a visual aid device, making it impossible to read and respond to personal and legal correspondence. Id. Finally, on July 30, 2020, Plaintiff was sent to see Defendant Tabor. Id. at 28. Tabor allegedly stated that she was aware of all of Plaintiff's medical complaints, but she did nothing to address them. Id. Instead, according to Plaintiff, Tabor stated that correctional officers had complained to the number of wooden canes in the prison yard and because Plaintiff had been complaining, she was revoking the order for his cane use. Id. Plaintiff alleges that he was prescribed the cane because of a stroke that left him unbalanced and damaged his sciatic nerve. Id. Without the cane, he is at risk of a slip and fall and serious injury. Id.

Plaintiff, across his claims, alleges significant pain and suffering due to HDSP handling of the COVID-19 pandemic and the withholding of his medications. Id. at 4–5. He also claims significant fear of harm. Id.

///
///
///
///
///

6

## II. DISCUSSION

Plaintiff broadly labels his two causes of action with the constitutional amendments allegedly violated. Id. at 4–5. But Plaintiff does not associate specific defendants' alleged conduct with one violation or the other. The allegations discussed below comprise the Court's effort to identify Plaintiff's discrete claims and any defects they contain. The Court will grant Plaintiff leave to amend his complaint to address any curable defects.

In his first cause of action, Plaintiff alleges violations of the First and Eighth Amendments. For the limited purposes of § 1915A screening, Plaintiff states a cognizable Eighth Amendment claim. His First Amendment claim, to the extent it relates to an inability to access the courts and the prison's grievance system, is also cognizable at this screening stage.

In his second cause of action, Plaintiff states cognizable Eighth Amendment claims against Dr. Tabor and the unknown correctional officers, but not against any other defendant. At this screening stage, he states a First Amendment claim to the extent that he alleges HDSP's COVID-19 restrictions were insufficient justification to preclude his ability to have contact with his family and review legal and personal correspondence. Plaintiff also states a Fourteenth Amendment claim at the screening stage to the extent his complaint alleges that defendants, even with COVID-19 restrictions, failed to protect him from harm or a substantial risk of harm.

Additionally, the Eleventh Amendment bars each of Plaintiff's claims for damages against Governor Gavin Newsom and Secretary Ralph Diaz.

**A. The Eleventh Amendment Bars All Claims for Damages Against Newsom and Diaz:**

The Eleventh Amendment prohibits federal courts from hearing suits brought against a state both by its own citizens, as well as by citizens of other states. See Brooks v. Sulphur Springs Valley Elec. Coop., 951 F.2d 1050, 1053 (9th Cir. 1991). This prohibition extends to suits against states themselves, and to suits against state agencies. See Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). A state's agency responsible for incarceration and correction of prisoners is a state agency for purposes of the Eleventh Amendment. See Alabama v. Pugh, 438 U.S. 781, 782

(1978) (per curiam); Hale v. Arizona, 993 F.2d 1387, 1398-99 (9th Cir. 1993) (en banc).

The Eleventh Amendment also bars actions seeking damages from state officials acting in their official capacities. See Eaglesmith v. Ward, 73 F.3d 857, 859 (9th Cir. 1995); Pena v. Gardner, 976 F.2d 469, 472 (9th Cir. 1992) (per curiam). The Eleventh Amendment does not, however, bar suits against state officials acting in their personal capacities. See id. Nor, under doctrine of Ex Parte Young, 209 U.S. 123 (1908), does it not bar suits for prospective declaratory or injunctive relief against state officials in their official capacities. See Armstrong v. Wilson, 124 F.3d 1019, 1025 (9th Cir. 1997). The Eleventh Amendment also does not bar suits against cities and counties. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.54 (1978).

To the extent that Plaintiff seeks damages from Defendants Newsom and Diaz in their official capacities, the Eleventh Amendment bars Plaintiff's suit. See Mitchell v. Washington, 818 F.3d 436, 441 (9th Cir. 2016); Eaglesmith, 73 F.3d at 859. To the extent Plaintiff seeks prospective declaratory or injunctive relief against Newsom and Diaz, cognizable claims against them may go forward. See Armstrong, 124 F.3d at 1025.

**B. Defects in Plaintiff's Second Cause of Action:**

    **1. Eighth Amendment Claims:**

Plaintiff states an Eighth Amendment claim against the unknown correctional officers who transported him to the appointment for skin cancer removal. But they are not named as defendants and the allegations against the officers do not state a claim against any other defendant. He also states an Eighth Amendment claim against Dr. Tabor. The rest of the allegations in Plaintiff's second cause of action, however, fail to satisfy Rule 8.

As discussed above, Rule 8 requires a complaint to contain a short and plain statement of the claim. The Federal Rules of Civil Procedure do not require detailed factual allegations, but vague and conclusory allegations of responsibility are insufficient. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must allege with some degree of particularity overt acts by specific defendants that support the claims, such that the complaint gives defendants fair notice of the claims and the grounds on which they rest. See Kimes, 84 F.3d at 1129. "[A] complaint must contain sufficient

factual matter, accepted as true, to "state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

Plaintiff's second cause of action includes allegations of constitutionally deficient medical treatment. See ECF No. 1 at 20–21. Plaintiff's litany of grievances, however, typically fails to identify any defendant responsible for the inadequate care. Except when Plaintiff discusses a specific defendant's conduct—for example, Dr. Tabor's alleged repossession of Plaintiff's cane—he does not associate any defendant with a discrete deprivation. Instead, the allegations broad, merely concluding that the deficient medical care resulted in cruel and unusual punishment. See id. at 21. Plaintiff's broad, conclusory allegations do not allege with adequate particularity any overt actions by any Defendant that would support Plaintiff's claims against them. As presently alleged, Plaintiff's complaint does not give Defendants fair notice of the specific claims against them and the grounds on which they rest.

### III. CONCLUSION

Because it is possible that some of the deficiencies identified in this order may be cured by amending the complaint, Plaintiff is entitled to leave to amend. See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc). Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint. See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992). Therefore, if Plaintiff amends the complaint, the Court cannot refer to the prior pleading in order to make Plaintiff's amended complaint complete. See Local Rule 220. An amended complaint must be complete in itself without reference to any prior pleading. See id.

If Plaintiff chooses to amend the complaint, Plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The complaint must allege in specific terms how each named defendant is involved and must set forth some affirmative link or connection between each defendant's actions and the claimed deprivation. See May v. Enomoto, 633 F.2d 164, 167

1   (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

2         Because the complaint appears to otherwise state cognizable claims, if no amended
3   complaint is filed within the time allowed therefor, the Court will issue findings and
4   recommendations that the claims identified herein as defective be dismissed, as well as such
5   further orders as are necessary for service of process as to the cognizable claims.

6         Accordingly, IT IS HEREBY ORDERED that Plaintiff may file a first amended
7   complaint within 30 days of the date of service of this order.

9   Dated:  November 3, 2020

                                                        DENNIS M. COTA
                                                        UNITED STATES MAGISTRATE JUDGE